# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:10-CV-00040-R

**JSC TERMINAL, LLC**                                                                 **PLAINTIFF**

v.

**PAUL F. FARRIS**                                                                    **DEFENDANT**

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion for Sanctions (DN 38). Plaintiff has responded (DN 42), and Defendant has replied (DN 44). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

This case arose out of Plaintiff JSC Terminal, LLC ("JSC") allegation that Defendant Paul F. Farris, its former employee, violated a Non-Competition and Confidentiality Agreement ("Agreement"). Farris argued that JSC could not bring a breach of contract claim against him because the Agreement was never assigned to JSC.

On or about September 19, 2007, Farris was hired by MidWest Terminal, Inc. ("MidWest") as a salesperson. At that time, Farris executed the Agreement as a condition of his employment with MidWest. He agreed to a non-compete clause that restricted his actions for three years after his employment with "the Company," defined as MidWest and its subsidiaries or affiliates.

On February 18, 2009, MidWest entered into an Asset Purchase Agreement ("APA") with JSC. The APA provided for the transfer of assets from MidWest to JSC. The APA also included a clause limiting JSC's assumption of liabilities and a clause barring MidWest's employee agreements from being binding on JSC. Pursuant to the APA, on February 18, 2009,

Farris was terminated by MidWest. Farris was then hired by JSC.

On January 11, 2010, JSC terminated Farris. Subsequently, Farris accepted employment with Seay Oil Company, Inc. ("Seay") in Hopkinsville, Kentucky. JSC claimed that Farris solicited its business for Seay in violation of the Agreement.

On May 27, 2010, the Court held that JSC was not assigned rights under the Agreement and dismissed it as a plaintiff. The Court allowed thirty days for MW Terminal, Inc. f/k/a MidWest Terminal, Inc. to join as plaintiff and told Farris that he may offer a proposed order of dismissal to the Court if MW Terminal did not do so. Instead of submitting a proposed order of dismissal, Farris moved for sanctions pursuant to this Court's inherent powers and 28 U.S.C. § 1927.

## STANDARD

A district court may "award sanctions pursuant to its inherent powers when bad faith occurs." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citation omitted). "In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.* (citations omitted).

Additionally, 28 U.S.C. § 1927 "allows a court to require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Rentz*, 556 F.3d at 396 (quoting 28 U.S.C. § 1927). The Sixth Circuit has held:

> [A] court may sanction an attorney under § 1927 for unreasonably and vexatiously multiplying the proceedings "despite the absence of any

conscious impropriety." An attorney is therefore sanctionable under § 1927 "without a finding of bad faith, 'at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" However, "'[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" Under this objective standard, "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence."

*Id.* (citations omitted). "The purpose of § 1927 is 'to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.'" *Garner v. Cuyahoga*, 554 F.3d 624, 644 (6th Cir. 2009) (citation omitted).

## ANALYSIS

While JSC's position was unsuccessful, it was not frivolous nor was it devoid of merit. Sanctions in this matter would be inappropriate.

In response to Farris's Motion for Summary Judgment, JSC argued that the Agreement was assigned to it in the APA. The APA transferred "[a]ll assets used by [MidWest] to operate [MidWest's] business." JSC interpreted this subsection of the APA as assigning the Agreement, because a contract is an asset. This was not an unreasonable interpretation of the APA. The Court carefully considered JSC's position and examined this subsection as well as another subsection of Section 1.1 of the APA. The Section provides that at the closing, MidWest "shall grant, sell, convey, assign and deliver . . . all right title and interest . . . to the following real and personal property (hereinafter referred to as 'Assets')" to JSC:

> (a) All assets used by [MidWest] to operate [MidWest's] business, including but not limited to the furniture, fixtures and equipment, card lock monitoring system, Veeter-Root system, storage tanks, pumps and accessories described on Schedule 1.1(a) attached hereto.

3

> . . .
>
> (i) All other assets, whether tangible or intangible, which are required and necessary to operate the business, including but not limited to registration, licenses and permits, and all contracts and personal property leases (to extent such contracts are assignable and to the extent [JSC] agrees to assume such contract and any related liability), and any other information utilized in the operation of the business .
> . . .

The Court determined that the better interpretation of the APA was that subsection (a) refers to physical assets such as furniture, fixtures and equipment and subsection (i) refers to contracts. Because JSC had not shown that the Agreement was required and necessary to operate its business or that it agreed to assume the Agreement and any related liability, the Court found that the APA did not assign the Agreement to JSC.

In advocacy of its position, JSC provided the Court with a detailed and well-supported brief. Furthermore, the Court does not believe that JSC pursued its case for an improper purpose. JSC believed Farris was soliciting business from JSC's customers on behalf of his new employer, Seay. JSC believed that Farris was contractually prohibited from doing so, and took action, in good faith, to protect what it believed were its rights pursuant to the Agreement. Finally, JSC's counsel did not, in any way, unreasonably and vexatiously multiply the proceedings in this case.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Sanctions (DN 38) is DENIED.